# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
December 13, 2018

*In re* GLASS/HENDRIX, Minors.

Nos. 343679; 343680
Wayne Circuit Court
Family Division
LC No. 17-000948-NA

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

In Docket No. 343679, respondent-mother appeals as of right the trial court order terminating her parental rights to the minor children NG, AH, and ALH, under MCL 712A.19b(3)(b)(*ii*), (b)(*iii*), (g), and (j).[1] In Docket No. 343680, respondent-father appeals as of right the trial court order terminating his parental rights to AH and ALH under MCL 712A.19b(3)(b)(*i*), (g), (h), and (j). Because there are no errors warranting relief, we affirm in both cases.

## I. BASIC FACTS

In November 2016, NG disclosed to her cousin that respondent-father had sexually abused her. NG's cousin reported the abuse to her own mother, who notified NG's father. NG's father immediately contacted respondent-mother and notified her of the allegations. He then took NG to the police station to report the abuse. During an interview with Child Protective Services (CPS), NG testified that respondent-father had touched her at least ten times, and she described with specificity three instances where respondent-father touched her buttocks and breasts. As part of a safety plan, NG was removed from respondent-mother's care and placed with her father. AH and ALH remained in respondent-mother's care. In addition, CPS explained to respondents that the safety plan precluded respondent-father from having contact with any of the children.

_____

[1] NG's father is a non-respondent parent. Thus, references to respondent-father refer only to AH and ALH's father.

-1-

In January 2017, at a Family Team Meeting, the terms of the safety plan were reiterated, and the CPS worker informed respondents that a permanent custody petition was required because of the nature of the allegations. The CPS worker, however, concluded that respondent-mother was unaware of the abuse because she seemed genuinely surprised by the allegations, and she stated that termination of respondent-mother's parental rights would not be sought.

It later came to CPS's attention that respondent-mother was not following the safety plan. In May 2017, during a telephone conversation with respondent-mother, NG could hear respondent-father speaking in the background. NG became distraught and could not understand why her mother would choose respondent-father over her. Then, during a June 1, 2017 welfare check at the children's school, a CPS worker learned that respondent-mother had violated the safety plan. After conversations with both AH and his teacher, the CPS worker concluded that respondent-father was still in the family home and transporting AH to school. Although respondent-mother consistently denied violating the safety plan, when confronted, respondent-father admitted that he had been in the family home and had continued contact with his children. He added that he was never with his children unsupervised.

In addition to learning of the violation of the safety plan, in June 2017, CPS discovered that there were criminal charges pending against respondent-father for the alleged 2015 sexual assault of KL, respondent-mother's niece. Respondent-mother admitted that she was informed of KL's allegations in June 2015, but she stated that she did not believe them because no actions were taken by CPS or law enforcement at the time. Respondent-father was jailed in June 2017. He was charged with fourth-degree criminal sexual conduct with regard to KL's allegations and with second-degree criminal sexual conduct (CSC-II) with regard to NG's allegations.

In June 2017, AH and ALH were removed from respondent-mother's care and placed with their maternal aunt and uncle. On June 10, 2016, a petition was filed requesting termination of respondent-mother's parental rights and the parental rights of AH and ALH's father at the initial disposition. Because respondent-father had never established paternity, he was identified as AH and ALH's putative father. The petition alleged that respondent-father had sexually assaulted NG and that respondent-mother had failed to prevent the abuse despite having an opportunity to do so.

In response to the petition, the trial court suspended respondent-mother's parenting time, and the matter was set for a combined adjudication trial and termination hearing. At the conclusion of the hearing, the trial court found by a preponderance of the evidence that there were statutory grounds for jurisdiction under MCL 712A.2(b)(1) and (2). It also found that that there existed clear and convincing evidence to terminate respondent-mother's parental rights. The court also concluded that, because no father had come forth to establish paternity of AH and ALH, there was clear and convincing evidence to terminate the parental rights of the "unknown father" pursuant to MCL 712A.19b(3)(a)(*i*). After the court's ruling, respondent-father's lawyer represented that respondent-father was willing to sign an affidavit of parentage. At that point, the court indicated that it was reserving ruling on both jurisdiction and statutory grounds related to respondent-father. In anticipation of the best-interest hearing, the court then ordered that respondents be evaluated by the Clinic for Child Study. Finally, over petitioner's objection, the trial court granted respondent-mother supervised visits with NG, preferably in a therapeutic setting and with NG's consent. Regarding AH and ALH, the court granted respondent-mother

supervised visits at the agency. Immediately after the combined adjudication trial and termination hearing, respondent-father signed affidavits of parentage with respect to AH and ALH.

Respondents were evaluated at the Clinic for Child Study. The clinician interviewed respondents, the minor children, and the relative caregivers. She also participated in a case conference with the foster care specialist. The clinician concluded that reunification was not in the children's best interests, and she opined that respondents' likelihood of making substantial changes and using good judgment in the care and safety of their children was "very poor."

In December 2017, respondent-father entered a plea on three counts of second-degree criminal sexual conduct. On January 8, 2018, he was sentenced to serve 25 to 40 years' imprisonment on each count. On December 18, 2017, he was acquitted of fourth-degree criminal sexual conduct charges arising out of the 2015 sexual assault allegations.

The best-interest hearing was held in March 2018. At that time, based on the stipulation of the parties, the petition was orally amended to allege that respondent-father was now the legal father of AH and ALH and that there existed statutory grounds to assume jurisdiction and terminate his parental rights. The trial court held that, based on the testimony from the November 16, 2017 hearing, there was a preponderance of the evidence showing that AH and ALH came within its jurisdiction based on respondent-father's criminality and incarceration. The court further found that there existed clear and convincing evidence to terminate respondent-father's parental rights to AH and ALH. Thereafter, the court took testimony relative to the best interests of the children. At the conclusion of the hearing, the court found that termination of respondents' parental rights was in the children's best interests and it entered an order terminating both parents' parental rights.

## II. STATUTORY GROUNDS

## A. STANDARD OF REVIEW

Respondents argue that the trial court erred by finding statutory grounds for termination of their parental rights. In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews for clear error the trial court's findings. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

## B. ANALYSIS

The court terminated respondent-mother's parental rights to her children under MCL 712A.19b(3)(b)(*ii*), (b)(*iii*), (g), and (j), and it terminated respondent-father's parental rights to his children under MCL 712A.19b(3)(b)(*i*), (g), (h), and (j).[2]

Under MCL 712A.19b(3)(b), a trial court may terminate a parent's parental rights if

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

> (*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

The trial court did not clearly err by finding clear and convincing evidence to terminate respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*). Respondent-father contends that there is no credible abuse that he sexually assaulted NG, who is a sibling of his children, AH and ALH. However, NG testified that respondent-father sexually abused her on multiple occasions. The trial court was in the best position to judge NG's credibility, and we will not interfere with that determination. *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016). In addition, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Thus, respondent-father's sexual abuse of NG allows for an inference that his children may be at risk of abuse in the foreseeable future if placed in his home. Respondent-father's sexual abuse of NG was part of a pattern of inappropriate sexual misconduct and was not an isolated event as there was evidence that he had also sexually molested NG's cousin and that he had sexually abused NG on multiple

---

[2] The trial court also orally stated that it was terminating respondent-father's parental rights under MCL 712A.19b(3)(n)(*i*); however, the written order does not reflect that oral pronouncement. A trial court speaks through its written orders. *In re Gazella*, 264 Mich App 668, 677; 692 NW2d 708 (2005), superseded in part on other grounds as stated in *In re Hansen*, 285 Mich App 158, 163-164; 774 NW2d 698 (2009), vacated on other grounds 486 Mich 1037 (2010). Accordingly, we will not consider whether there is clear and convincing evidence to support termination under MCL 712A.19b(3)(n)(*i*).

occasions. Accordingly, on this record, the trial court did not clearly err by finding that termination of respondent-father's parental rights was proper under MCL 712A.19b(3)(b)(*i*).[3]

With respect to respondent-mother, clear and convincing evidence established that ten-year-old NG was sexually assaulted by respondent-father, and that respondent-mother had the opportunity to prevent the abuse yet failed to do so. Again, NG testified that respondent-father sexually assaulted her at least ten times. In a bench trial, the trial court is the finder of fact that determines the weight and credibility of the evidence presented. *Wright v Wright,* 279 Mich App 291, 299; 761 NW2d 443 (2008). The trial court found credible NG's accounts of the sexual abuse. This Court must, therefore, afford deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App at 227 (quotation marks and citation omitted).

Moreover, the record supports a finding that respondent-mother knew or should have known that respondent-father posed a risk of harm to her daughter. Respondent-mother admitted that in June 2015 she was aware that her niece had accused respondent-father of sexual misconduct. Despite this knowledge, respondent-mother permitted her children to be left unsupervised in respondent-father's care, and NG was, in fact, sexually abused. Although respondent-mother contends that it is improper to consider evidence of the 2015 sexual abuse allegations because those allegations were not investigated nor substantiated by CPS at the time, the fact that these allegations were not validated until 2017 do not make the allegations irrelevant and the trial court did not err by considering them.

Further, there was clear and convincing evidence to support the court's finding that there existed a reasonable likelihood that the children would suffer injury or abuse in the foreseeable future if returned to respondent-mother's home. After NG reported the abuse she was placed with her biological father. However, AH and ALH were permitted to remain in respondent-mother's care. Petitioner initiated a safety plan that prohibited respondent-father from having contact with any of the children. Notwithstanding this safety plan, respondent-mother violated the plan by permitting respondent-father to remain in the family home and have contact with AH and ALH. AH's teacher testified that respondent-father continued to drop off and pick up AH throughout the entire school year. NG's biological father testified that every time he went to respondent-mother's home to pick things up for NG, respondent-father was in the home. Moreover, respondent-father admitted to the caseworker that he had continued contact with his children. Finally, NG testified that she heard respondent-father's voice in the background during a phone conversation she was having with respondent-mother. Overall, respondent-mother's conduct demonstrated that she was unwilling to put her children's needs ahead of her own.

---

[3] Because only one ground for termination need be establish, we need not determine whether termination was proper under MCL 712A.19b(3)(g), (h), and (j). See *In re Trejo,* 462 Mich at 355.

Accordingly, the trial court did not err when it found clear and convincing evidence to terminate respondent-mother's parental rights to her three children pursuant to MCL 712A.19(b)(*ii*).[4]

## III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Respondent-mother next argues that the trial court abused its discretion by admitting a report from her evaluation at the Clinic for Child Study. She asserts that the report was not relevant or reliable because the clinician did not conduct any psychological testing before reaching a conclusion that termination was in the children's best interests. Respondent-mother further argues that the factual assertions made by the clinician in the report were inconsistent with respondent-mother's trial testimony. However, respondent-mother acknowledges that the parties stipulated to the admission of the report. By affirmatively approving the admission of the report, she waived any claim of error related to the substance of the evidence. *People v Carter*, 462 Mich 206, 215; 612 NW3d 144 (2000). Nevertheless, respondent-mother contends that her lawyer provided ineffective assistance by not challenging the admissibility of the report. This Court applies criminal law principles to claims of ineffective assistance in child protective proceedings. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Accordingly, a respondent preserves a claim of ineffective assistance by raising the issue in a motion for a new trial or an evidentiary hearing. See *People v Payne,* 285 Mich App 181, 188; 774 NW2d 714 (2009). Respondent-mother did not move for a new trial or evidentiary hearing below; therefore, this Court's review is limited to mistakes apparent on the record. *Id*.

### B. ANALYSIS

"To establish a claim of ineffective assistance of counsel, a [respondent] must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. In order to demonstrate that counsel's performance was deficient, the [respondent] must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003) (citations omitted). Establishing prejudice necessarily requires demonstrating a reasonable probability that the result of the proceedings would have been different but for the lawyer's error. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).

Although vaguely hinted at, respondent-mother does not actually challenge the qualifications of the clinician who performed the evaluation and drafted the report. Instead, she challenges the conclusions reached by the clinician. Specifically, respondent-mother contends that the clinician's reliance on her failure to attend parenting time when offered was not appropriate because she provided a legitimate explanation for her failure to attend visits. Respondent-mother also notes that the clinician only interviewed witnesses, but did not perform

---

[4] Because only one statutory ground needs to be established, we decline to address whether the trial court erred by finding termination proper under MCL 712A.19b(3)(b)(*iii*), (g), and (j). See *In re Trejo,* 462 Mich at 355.

any psychological tests. Respondent-mother does not address how the results of the evaluation would have been different had the tests been administered or additional individuals interviewed. And, ultimately, the nature of her challenge goes to the weight and credibility of the clinician's opinion, not to its admissibility. See *Surman v Surman*, 277 Mich App 287, 309-310; 745 NW2d 802 (2007). As a result, even if respondent-mother's lawyer had objected to the admission of the report, it is unlikely that his objection would have been successful. Accordingly respondent-mother has failed to establish that her lawyer's performance fell below an objective standard of reasonableness.

## IV. BEST INTERESTS

### A. STANDARD OF REVIEW

Lastly, respondents challenge the trial court's finding that termination of their parental rights was in the children's best interests. An appellate court reviews a trial court's best interests' decision for clear error. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

### B. ANALYSIS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss Minors*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The court may also consider psychological evaluations and the child's age. *In re Jones,* 286 Mich App at 131.

The trial court recognized that the children were placed with relatives. Pursuant to MCL 712A.19a(8)(a), a child's placement with relatives weighs against termination. Yet, while the fact that a child is living with a relative must be considered, a trial court may still terminate parental rights in lieu of placement with a relative if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court considered that AH and ALH were placed with relatives and it found that to ensure their continued safety, growth, and development, termination of respondents' parental rights was warranted. The children were thriving in their placements. This forward progress could continue as the aunt and uncle expressed a desire to adopt AH and ALH.

Next, despite being allowed supervised visitation with her children following the termination hearing, respondent-mother only attended 3 out of 20 visits offered. Additionally, despite respondent-father's convictions for sexually assaulting NG, respondent-mother continued her relationship with him. Between July 17, 2017 and November 30, 2017, she had 136 "contacts" with respondent-father, who was incarcerated. She admitted that although she was not sure if she answered each call, she did so "a lot." She stated that she only told respondent-

father what he wanted to hear, such as she would attend his trial and "Don't worry about it. I had to testify a certain way in court." Respondent-mother further testified that she would put money in respondent-father's prison account and maintain contact with his criminal lawyer. She also acknowledged telling him that she loved him. Respondent-mother testified that she maintained the above contact because respondent-father had threatened her; however, the court did not find her testimony credible. Instead, the court found that respondent-mother continued to neglect her children, as evidenced by her failure to attend supervised parenting time. The court also found that the children needed stability, security, permanence and finality, without negative interference, continued dishonesty, instability, and poor judgment from respondent-mother. Given the above, the court's findings are not clearly erroneous. All three children were at an age where they required stability, permanency, and finality in order to foster their continued growth and development. Therefore, the court did not err by finding that termination of respondent-mother's parental rights was in her children's best interests.

Further, the record reflects that respondent-father sexually abused NG on multiple occasions. He was convicted of three counts of second-degree criminal sexual misconduct related to the abuse and was sentenced to 25 to 40 years imprisonment. While there was some evidence of a bond between respondent-father and AH, this bond cannot be elevated to the point where it would outweigh the children's need for safety and security. And, again, the children were at an age where they required stability, permanency, and finality in order to foster their continued growth and development. Thus, the court also did not err by finding termination of respondent-father's parental rights was in AH and ALH's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien